1  DANIEL G. BOGDEN
   United States Attorney
2  ERIC JOHNSON
   Assistant United States Attorney
3  Lloyd D. George United States Courthouse
   333 Las Vegas Boulevard South, Room 5037
4  Las Vegas, Nevada 89101
   Phone Number: (702) 388-6336
5  Facsimile: (702) 388- 6418

6

7              **UNITED STATES DISTRICT COURT**

8                  **DISTRICT OF NEVADA**

9   UNITED STATES OF AMERICA      )
                                  )
10            Plaintiff,          )    2:10-cr-00217-PMP(PAL)
                                  )
11      vs                       )    **PLEA MEMORANDUM**
                                  )
12   **NIKOLAY MLADENOV,**        )
                                  )
13            Defendant.          )
    _____      )

14          The United States, by and through Daniel G. Bogden, United States Attorney, and Eric

15  Johnson, Assistant United States Attorney, and defendant **NIKOLAY MLADENOV** and defendant's

16  attorney, Charles Kelly, Esq, submit this plea memorandum.

17  **I. PLEA AGREEMENT**

18          This agreement is contingent on at least four (4) of five (5) co-defendants, **DIMITAR**

19  **DIMITROV, DRAGOMIR TASKOV, ANGEL IORDANOV, DANAIL TCHANEV, BOYAN**

20  **GUEORGUIEV, and BOYAN GUEORGUIEV,** successfully enter their guilty pleas together with

21  defendant **NIKOLAY MLADENOV,** in the cases numbered 2:10-cr-216-PMP(PAL) and 2:10-cr-

22  217-PMP(PAL), and that all pleas are accepted by the Court

23          The United States and defendant have reached the following plea agreement, which is

24  not binding on the court:

25

26

**A. The Plea**

Defendant will plead guilty to Count One of the Indictment, case number 2:10-cr-217-PMP(PAL).  Count One charges Defendant with a violation of Title 18, United States Code, Section 371, conspiracy to receive, possess, and conceal unlawfully converted property of the value of $5,000 or more, which crossed a State boundary, in violation of Title 18, United States Code, Section 2315, to transport in interstate commerce property of the value of $5,000 or more, which was taken by fraud, in violation of Title 18, United States Code, Section 2314, and to transmit interstate wire communications in furtherance and execution of a scheme and artifice to defraud, in violation of Title 18, United States Code, Section 1343. Defendant will agree to the criminal forfeitures provided in Indictment, 2:10-cr-217-PMP(PAL).

**B. Additional Charges**

The United States Attorney's Office for the District of Nevada ("United States") will bring no additional charge or charges against defendant arising out of the investigation of the charges contained in the Indictment herein, and indictments, case numbers 2:10-cr-215-KJD(LRL) and 2:10-cr-217-PMP(PAL). However, this plea agreement does not foreclose prosecution for an act of murder, attempted murder, an act of physical violence against the person of another, or any conspiracy to commit any such act of violent unlawful activity.

**C. Sentencing Guideline Calculations**

1.  Defendant understands that the court is required to consider the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") among other factors in determining defendant's sentence. Defendant understands that the Sentencing Guidelines are advisory, and that after considering the Sentencing Guidelines, the court may be free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crimes of conviction.

2.  The base offense level for conspiracy to commit wire fraud is six (6). U.S.S.G. §2B1.1(a)(1).

3.  Plus 2 for more than 10 but less than 50 victims. U.S.S.G.  §2B1.1 (b)(2)(A)

2

4.      Plus 12 for an amount over $200,000 in loss.  U.S.S.G.  §2B1.1 (b)(1)(H), resulting in an offense level of 20.

6.      The parties stipulate that no other guideline enhancements or reductions, except those described herein, should apply in calculating the total advisory guideline offense level.

7.      Pursuant to USSG §3E1.1(a), the United States will recommend that defendant receive a two-level adjustment for acceptance of responsibility unless defendant (a) fails to make a complete factual basis for the guilty plea at the time it is entered; (b) is untruthful with the Court or probation officers; (c) denies involvement in the offense or provides conflicting statements regarding defendant's involvement; (d) attempts to withdraw the guilty plea; (e) engages in criminal conduct; (f) fails to appear in court; or (g) violates the conditions of pretrial release.

8.      Under USSG §3E1.1(b), the United States will, in its sole discretion, make a motion for an additional one-level adjustment for acceptance of responsibility prior to sentencing if defendant timely notifies the United States of defendant's intention to plead guilty, thereby permitting the United States to avoid preparing for trial and allowing for the efficient allocation of resources.

9.      If all six defendants currently pending trial in indictments, case numbers 2:10-cr-216-PMP(PAL) and 2:10-cr-217-PMP(PAL), that being **DIMITAR DIMITROV, ANGEL IORDANOV, DANAIL TCHANEV, DRAGOMIR TASKOV, ,BOYAN GUEORGUIEV, and NIKOLAY MLADENOV**, enter pleas of guilty pursuant to plea agreements with the Government and their pleas are accepted by the Court, the Government will move for a four (4) level group plea downward departure.  If five (5) of the six (6) defendants currently pending trial in indictments, case numbers 2:10-cr-216-PMP(PAL) and 2:10-cr-217-PMP(PAL), enter pleas of guilty pursuant to plea agreements with the Government and their pleas are accepted by the Court, the Government will move for a three (3) level group plea downward departure. If less than five of the defendants currently pending trial enter guilty pleas, the Government will not make any motion for a group plea downward departure.

3

10.     Defendant agrees that the court may consider any count dismissed under this agreement, along with all other relevant conduct whether charged or uncharged, in determining the applicable sentencing guidelines range, the propriety and extent of any departure from that range, and the determination of the sentence to be imposed after consideration of the sentencing guidelines and all other relevant factors.

11.     Defendant's Criminal History Category will be determined by the Court.

**D. Other Sentencing Matters**

1.     The parties agree that the Guideline calculations are based on information now known and could change upon investigation by the United States Probation Office. It is possible that factors unknown or unforeseen by the parties to the plea agreement may be considered in determining the offense level, specific offense characteristics, and other related factors. In that event, defendant will not withdraw defendant's plea of guilty.

2.     The stipulations in this agreement do not bind either the United States Probation Office or the court. Both defendant and the United States are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the court, and (b) correct any and all factual misstatements relating to the calculation of the sentence.

**E.   Fines and Special Assessment**

1.     Defendant agrees that the court may impose a fine due and payable immediately upon sentencing.

2.     Defendant will pay the special assessment of $100 per count of conviction at the time of sentencing, for a total of $100.

**F.   Restitution**

Defendant agrees to make full restitution in an amount to be determined by the Court, which defendant agrees shall include all relevant conduct as determined by the Court. In return for defendant agreeing to make restitution for relevant conduct, the United States agrees not to bring charges against defendant for the conduct giving rise to the relevant conduct. Defendant understands

4

that any restitution imposed by the Court may not be discharged in whole or in part in any present or future bankruptcy proceeding.

**G. Waiver of Appeal**

1. In exchange for the concessions made by the United States in this plea agreement, defendant knowingly and expressly waives: 1) the right to appeal any sentence that is imposed within or below the applicable Sentencing Guideline range as determined by the Court; 2) the right to appeal the manner in which that sentence was determined on the grounds set forth in Title 18, United States Code, Section 3742; 3) the right to appeal any other aspect of the conviction or sentence, including any order of restitution; and 4) the right to make all collateral challenges, including any claims under 28 U.S.C. § 2255, to his conviction, sentence and the procedure by which the Court adjudicated guilt and imposed sentence, except non-waivable claims of ineffective assistance of counsel.

2. Notwithstanding the stipulations in this agreement, the parties are free to argue on appeal and collateral review that the court's sentencing guidelines calculations are not error. However, each party agrees to maintain its view that the calculation in paragraph C are consistent with the facts of this case.

**H. Additional Promises, Agreements, and Conditions**

1. In exchange for the United States entering into this agreement, defendant agrees that (a) the facts set forth in Section IV of this Plea Agreement shall be admissible against defendant under Fed. R. Evidence. 801(d)(2)(A) in the following circumstances: (1) for any purpose at sentencing; and (2) in any subsequent proceeding, including a trial in the event defendant does not plead guilty or withdraws defendant's guilty plea, to impeach or rebut any evidence, argument or representation offered by or on defendant's behalf; and (b) defendant expressly waives any and all rights under Fed. R. Criminal P. 11(f) and Fed. R. Evid. 410 with regard to the facts set forth in Section IV of the Plea Agreement to the extent set forth above.

5

2.      The parties agree that no promises, agreements, and conditions have been entered into other than those set forth in this plea memorandum, and not will be entered into unless in writing and signed by all parties.

**I.    Limitations**

This Plea Agreement is limited to the United States Attorney's Office for the District of Nevada and cannot bind any other federal, state or local prosecuting, administrative, or regulatory authority.  However, this Plea Memorandum does not prohibit the United States through any agency thereof, the United States Attorney's office for the District of Nevada, or any third party from initiating or prosecuting any civil proceeding directly or indirectly involving defendant, including but not limited to, proceedings under the False Claims Act relating to potential civil monetary liability or by the Internal Revenue Service relating to potential tax liability.

**J.    Forfeiture**

1.      Defendant knowingly and voluntarily agrees to the abandonment, the civil administrative forfeiture, the civil judicial forfeiture, or the criminal forfeiture of the following property as provided in the superseding indictment:

        a.      2008 Subaru Tribeca, VIN;

        b.      2008 Tracker Pro 170 boat, VIN;

        c.      2008 Trailstar Boat Trailer, VIN;

        d.      2008 Audi A3 VIN;

        e.      2008 Subaru Imbreza Outback Wagon, VIN;

        f.      2008 Mercedes Benz S550, VIN;

        g.      2008 Sea Ray boat, VIN;

        h.      2008 Shorelander Boat Trailer, VIN;

        i.      2008 Audi A4, VIN;

        j.      2007 Volvo S60, VIN;

        k.      2008 Hyundai Accent, VIN.

6

2.  Defendant knowingly and voluntarily agrees to abandon or to forfeit the property to the United States.

3.  Defendant knowingly and voluntarily agrees to relinquish all right, title, and interest in the property.

4.  Defendant knowingly and voluntarily agrees to waive his right to any abandonment proceedings, any civil administrative forfeiture proceedings, any civil judicial forfeiture proceedings, or any criminal forfeiture proceedings ("proceedings") of the property.

5.  Defendant knowingly and voluntarily agrees to waive service of process of any and all documents filed in this action or any proceedings concerning the property arising from the facts and circumstances of this case.

6.  Defendant knowingly and voluntarily agrees to waive any further notice to him, his agents, or his attorney regarding the abandonment or the forfeiture and disposition of the property.

7.  Defendant knowingly and voluntarily agrees not to file any claim, answer, petition, or other documents in any proceedings concerning the property.

8.  Defendant knowingly and voluntarily agrees to waive the statute of limitations, the CAFRA requirements, Fed. R. Crim. P. 7(c)(2), 32.2(a), and 32.2(b)(3), and the constitutional due process requirements of any abandonment proceeding or any forfeiture proceeding concerning the property.

9.  Defendant knowingly and voluntarily agrees to waive his right to a jury trial on the forfeiture of the property.

10.  Defendant knowingly and voluntarily agrees to waive (a) all constitutional, legal, and equitable defenses to, (b) any constitutional or statutory double jeopardy defense or claim concerning, and (c) any claim or defense under the Eighth Amendment to the United States Constitution, including, but not limited to, any claim or defense of excessive fine in any proceedings concerning the property.

7

1       11. Defendant knowingly and voluntarily agrees to the entry of an Order of Forfeiture

2   of the property to the United States.

3       12. Defendant knowingly and voluntarily agrees and understands the abandonment,

4   the civil administrative forfeiture, the civil judicial forfeiture, or the criminal forfeiture of the property

5   shall not be treated as satisfaction of any assessment, fine, restitution, cost of imprisonment, or any

6   other penalty this Court may impose upon the Defendant in addition to the abandonment or the

7   forfeiture.

8   **K.    Cooperation**

9       1.      Defendant agrees, if requested by the United States, to provide complete and

10   truthful information and testimony concerning his knowledge of all other persons who are committing

11   or have committed offenses against the United States, and agrees to cooperate fully with the United

12   States in the investigation and prosecution of such persons.  Defendant agrees that the information he

13   provides can be used against him to establish relevant conduct.  Defendant understands that his

14   cooperation is based on the following terms and conditions:

15       (a)     Defendant shall cooperate truthfully, completely and forthrightly with

16   the United States Attorney's Office for the District of Nevada (this Office) and other Federal, state and

17   local law enforcement authorities identified by this Office in any matter as to which the Government

18   deems the cooperation relevant.

19       (b)     Defendant shall promptly turn over to the Government or other law

20   enforcement authorities or direct such law enforcement authorities to any and all evidence of crime;

21   all contraband and proceeds of crime; and all assets traceable to such proceeds of crime.

22       (c)     Defendant shall submit a full and complete accounting of all his

23   financial assets, whether such assets are in his name or in the name of a third party.

24       (d)     Defendant shall testify fully and truthfully before any Grand Jury in the

25   District of Nevada, and elsewhere, and at all trials of cases or other Court proceedings in the District

26   of Nevada and elsewhere, at which his testimony may be deemed relevant by the Government.

8

(e)      Defendant agrees not to commit any criminal violation of local, state or federal law during the period of his cooperation with law enforcement authorities pursuant to this Agreement or at any time prior to the sentencing in this case. The commission of a criminal offense during the period of his cooperation or at any time prior to sentencing will constitute a breach of this plea agreement and will relieve the Government of all of its obligations under this agreement. However, Defendant acknowledges and agrees that such a breach of this Agreement will not entitle him to withdraw his plea of guilty. Defendant further understands that, to establish a breach of this agreement, the Government need only prove Defendant's commission of a criminal offense by a preponderance of the evidence.

2.       Defendant acknowledges and understands that during the course of the cooperation outlined in this agreement Defendant will be interviewed by law enforcement agents and/or Government attorneys and that Defendant has the right to have defense counsel present during these interviews. After consultation with counsel, and with counsel's concurrence, Defendant knowingly and voluntarily waives this right and agrees to meet with law enforcement agents and Government prosecutors outside of the presence of counsel. If at some future point counsel or Defendant desire to have counsel present during interviews by law enforcement agents and/or Government attorneys, the Government will honor this request, and this change will have no effect on any other terms and conditions of this Agreement.

3.       Defendant knowingly and voluntarily waives or gives up all of Defendant's constitutional and statutory rights to a speedy trial and speedy sentence, and agrees that the plea of guilty pursuant to this agreement will be entered at a time decided upon by the Government with the concurrence of the Court. Defendant also agrees that the sentencing in this case may be delayed until Defendant's cooperation has been completed, as determined by the Government, so that the Court will have the benefit of all relevant information before a sentence is imposed. Defendant understands that the date for sentencing will be set by the Court.

9

4. Defendant understands that the sentence in this case will be imposed in accordance with Title 18, United States Code, Section 3553 and the United States Sentencing Commission's Guidelines Manual, which are advisory. Defendant further understands that the sentence to be imposed is a matter solely within the discretion of the Court. Defendant acknowledges that the Court is not obligated to follow any recommendation of the Government at the time of sentencing or to grant a downward departure based on Defendant's substantial assistance to the Government, even if the Government files a motion pursuant to 18 U.S.C. § 3553 (e)(1) and/or Section 5K1.1 of the Federal Sentencing Guidelines and/or Rule 35 of the Federal Rules of Criminal Procedure.

5. Defendant understands that even if this Office informs the Court of Defendant's cooperation, substantial or otherwise, this Office reserves its full right of allocation for purposes of sentencing in this matter. In particular, the United States reserves its right to recommend a specific period of incarceration and fine up to the maximum sentence of incarceration and fine permitted by the terms of this plea agreement. In addition, if in this plea agreement the Government has agreed to recommend or refrain from recommending to the Court a particular resolution of any sentencing issue, the Government reserves its right to full allocation in any post-sentence litigation in order to defend the Court's ultimate decision on such issues. Defendant further understands that the Government retains its full right of allocation in connection with any post-sentence motion which may be filed in this matter and/or any proceeding(s) before the Bureau of Prisons. In addition, Defendant acknowledges that the Government is not obligated to file any post-sentence downward departure motion in this case pursuant to Rule 35 of the Federal Rules of Criminal Procedure.

6. Defendant understands and agrees that Defendant will not be allowed to withdraw the guilty plea entered under this agreement solely because of the harshness of the sentence imposed. Such a motion to withdraw shall constitute a breach of this agreement.

7. In the event the United States Attorney decides in his sole discretion that the assistance provided by Defendant amounts to "substantial assistance" pursuant to Section 5K1.1 of

the Sentencing Guidelines and Title 18, United States Code, Section 3553(e), or  Rule 35 of the Federal Rules of Criminal Procedure, the United States will file a motion with the Court to allow the Court to consider a downward departure.

8.     It is understood and agreed that a motion for departure based on substantial assistance shall not be made under any circumstances unless Defendant's cooperation is deemed to be substantial assistance by the United States Attorney. The United States has made no promise, implied or otherwise, that Defendant will be granted a departure for substantial assistance. Further, no promise has been made that a motion will be made for departure even if Defendant complies with all of the terms of this plea agreement in all respects but has been unable to provide substantial assistance as determined in the sole discretion of the United States Attorney.

9.     The United States agrees to consider the totality of the circumstances, including but not limited to the following factors, in determining whether, in the sole discretion of the United States Attorney, Defendant has provided substantial assistance which would merit a motion by the United States for a downward departure from the applicable guidelines sentencing range:

(a)     The United States' evaluation of the significance and usefulness of Defendant's assistance;

(b)     The truthfulness, completeness, and reliability of any information or testimony provided by Defendant;

( c)     The nature and extent of Defendant's assistance;

(d)     Any injury suffered, or any danger or risk of injury to Defendant or Defendant's family resulting from Defendant's assistance;

(e)     The timeliness of Defendant's assistance.

10.     It is understood and agreed that in the event a motion for departure is made by the United States based upon Defendant's perceived substantial assistance, the United States reserves the right to make a specific recommendation to the Court regarding the extent of the substantial

11

1  assistance departure; however, the final decision as to how much, if any, reduction in sentence is

2  warranted because of that assistance rests solely with the Court.

## II.

### PENALTY

1.  The maximum penalty for a violation of Title 18, United States Code, Section 371 is not more than five (5) years imprisonment, a fine of not more than $250,000, or both.

2.  Defendant is subject to supervised release for a term of up to three years. Supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

3.  Defendant must pay a special assessment at the time of sentencing of $100 for his one count of conviction.

4.  Defendant is required to pay for the costs of imprisonment, probation, and supervised release, unless defendant establishes that defendant does not have the ability to pay such costs, in which case the court may impose an alternative sanction such as community service.

## III.

### ELEMENTS

Title 18, United States Code, Section 371 provides in pertinent part:

> If two or more persons conspire ... to commit any offense against the United States ... and one or more of such persons do any act to affect the object of the conspiracy...

each shall be guilty of an offense.  18 U.S.C. § 371.

To establish a violation of section 371, the government must prove the following elements beyond a reasonable doubt:

> 1) On or about the dates alleged in Count One of the Indictment, there was an agreement between two or more persons to traffic in, produce and use one or more counterfeit access devices, in violation of Title 18,

United States Code, Sections 1029(a)(1), and to possess fifteen or more counterfeit and unauthorized access devices, in violation of Title 18, United States Code, Section 1029(a)(3);

2) The defendant became a member of the conspiracy knowing of its object and intending to help accomplish it; and

3) One of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

Manual of Model Criminal Jury Instructions for the Ninth Circuit, § 8.20 (2010)(modified).

Title 18, United States Code, section 1343 provides in pertinent part:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire ... communication in interstate ... commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice ...

shall be guilty of an offense against the laws of the United States.  18 U.S.C.A. § 1343 (West 1984).

To establish a violation of section 1343, the government must prove the following elements beyond a reasonable doubt:

First, the defendant knowingly participated in or devised a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

Second, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

Third, the defendant acted with the intent to defraud; that is, the intent to deceive or cheat; and

Fourth, the defendant used, or caused to be used, wire communications from one state to another to carry out or attempt to carry out an essential part of the scheme.

Manual of Model Criminal Jury Instructions for the Ninth Circuit, § 8.121 (2010)(modified)..

Title 18, United States Code, Section 2314 provides in pertinent part:

(1)  Whoever transports, transmits, or transfers in interstate . . . commerce any good, wares, merchandise, securities or money, of the value of $5000 or more, knowing the same to have been stolen, converted or taken by fraud . . .

shall be guilty of an offense against the United States.

13

To establish a violation of Section 2314(1), the following elements must be established beyond a reasonable doubt:

> (1) The defendant transported property taken by fraud between one state and another;

> (2) At the time of the property taken by fraud crossed the state border, the defendant knew it was taken by fraud;

> (3) The defendant intended to deprive the owner of the ownership of the property temporarily or permanently; and

> (4) The property was of the value of $5,000 or more.

Manual of Model Criminal Jury Instructions for the Ninth Circuit, § 8.189 (2010)(modified).

Title 18, United States Code, Section 2315 provides in pertinent part:

Whoever receives, conceals, stores, barters, sells, or disposes of any goods, wares or merchandise . . . of the value of $5,000 or more . . . moving as, or which are a part of, or which constitute interstate . . . commerce, knowing the same to have been stolen, unlawfully converted, or taken . . . [s] hall be fined not more than $10,000, or imprisoned not more than ten years, or both.

The essential elements to establish this offense are:

> (1) The defendant received and possessed unlawfully converted property that had crossed a state boundary after having been unlawfully converted;

> (2) At the time defendant did so he knew that the property had been unlawfully converted; and

> (3) The property was of a value of $5,000 or more.

Manual of Model Criminal Jury Instructions for the Ninth Circuit, § 8.190 (2010)(modified).

## IV.

## FACTS THAT SUPPORT GUILTY PLEA

1.      The defendant is pleading guilty because the defendant is guilty of the charged offense.

2.      In pleading to the offense, the defendant acknowledges that if the defendant elected to go to trial instead of entering this plea, the United States could prove facts sufficient to establish the defendant's guilt beyond a reasonable doubt.

14

3.      The defendant specifically admits and declares under penalty of perjury that all of the facts set forth below are true and correct.  **DRAGOMIR TASKOV, DIMITR DIMITROV, BOYAN GUEORGUIEV, ROSSEN DASKALOV, YULIYAN MILUSHEV, and NIKOLAY MLADENOV**, and other conspirators managed a complex fraud scheme to obtain vehicles from automobile dealerships in Nevada and elsewhere by obtaining automobile loan financing through false and fraudulent pretenses and representations.  Once the vehicles were obtained, some of the vehicles were sold or rented to third party buyers or lessors in the United States and some vehicles were smuggled out of the United States to Eastern Europe.  The defendants and other conspirators involved in the fraudulent acquisition of the vehicles did not make payments to the finance companies that funded the automobile loans, which resulted in financial loss to the finance companies, automobile dealerships and/or their insurance companies.

3. One of the fraud schemes utilized by the defendants and their other conspirators to obtain vehicles involved the use of  "straw buyers" who claimed to be employed by fictitious corporations or defunct business where they earned fictitious lucrative salaries.  The straw buyers relied on the automobile dealership or automobile loan finance companies to not fully verify their employment status or income and, subsequently, approve them for automobile loans without full verification.

4. A second fraud scheme used to acquire vehicles took advantage of the time delay that occurs between when a straw buyer applies for an automobile  loan and when the loan approval is actually posted to the straw buyer's credit report.  By purchasing several vehicles in a short period of time, the straw buyer can take advantage of multiple car dealerships in applying for loans.  The defendants and their other conspirators would enter several automobile dealerships in a short period of time and apply for credit at each dealership to purchase a vehicle.  After getting approved for credit at multiple dealerships, the defendants or their other conspirators would take delivery of all vehicles for which credit was granted before the newly funded automobile loans had a chance to post to the defendants' or their other conspirators' credit report.  As a result, the straw buyers

secured numerous loans from different automobile loan financing companies without the financing companies knowing about other existing or applied for loans.

5. Once the straw buyers took delivery of the fraudulently obtained vehicles, they typically delivered them to a higher level member of the conspiracy, usually to TASKOV. Members of the conspiracy then sold or rented the automobiles to individuals in Nevada and other states or would smuggle the vehicles out of the United States.

6. In furtherance of the above-described conspiracy, the defendants caused the fraudulent purchase of the following vehicles:

        a.     On or about March 6, 2008, defendant **BOYAN GUEORGUIEV** purchased a 2008 Mercedes S550 from Mercedes Benz of Arrowhead, 9260 W. Bell Road, Peoria, Arizona, financing approximately $114,039.43 of the purchase price.

        b.     On or about March 6, 2008, defendant **BOYAN GUEORGUIEV** purchased a 2006 Porsche 911 from Porsche North Scottsdale, 1800 N. Scottsdale Road, Phoenix, Arizona, financing approximately $73,503.75 of the purchase price.

        c.     On or about March 10, 2008, defendant **BOYAN GUEORGUIEV** purchased a 2008 Jeep Wrangler from Integrity Chrysler, 6770 Redwood Street, Las Vegas, Nevada, financing approximately $41,486.37 of the purchase price.

        d.     On or about March 11, 2008, defendant **BOYAN GUEORGUIEV** purchased a 2008 Sea Ray Boat and 2008 Shorelander Boat Trailer from MarineMax of Las Vegas, 3800 Boulder Highway, Las Vegas, Nevada, financing approximately $55,845.01 of the purchase price.

        e.     On or about March 11, 2008, defendant **BOYAN GUEORGUIEV** purchased a 2008 two-door Honda Accord from Honda West, 7615 W. Sahara Avenue, Las Vegas, Nevada, financing approximately $35,868.09 of the purchase price.

        f.     On or about March 11, 2008, defendant **BOYAN GUEORGUIEV** purchased a 2007 Mini Cooper from Desert Mini of Las Vegas, 2333 S. Decatur, Las Vegas,

Nevada, financing approximately $34,399.96 of the purchase price.

g.      On or about March 12, 2008, defendant **BOYAN GUEORGUIEV** purchased a 2008 Subaru Impreza Outback Wagon from Subaru of Las Vegas, 2025 S. Decatur, Las Vegas, Nevada, financing approximately $30,311.21 of the purchase price.

h.      On or about March 13, 2008, defendant **BOYAN GUEORGUIEV** purchased a 2008 Audi Q7 from Desert Audi, 6335 Sahara Avenue,  Las Vegas, Nevada, financing approximately $59,028.77 of the purchase price.

i.      On or about March 14, 2008, defendant **BOYAN GUEORGUIEV** purchased a 2008 Dodge Sprinter from Integrity Chrysler, 6770 Redwood Street, Las Vegas, Nevada, financing approximately $52,964.07 of the purchase price.

j.      On or about March 15, 2008, defendant **BOYAN GUEORGUIEV** purchased a 2008 four-door Nissan Sentra from Desert Nissan, 5800 W. Sahara Avenue, Las Vegas, financing approximately $27,270.54 of the purchase price.

k.      On or about March 19, 2008, defendant **BOYAN GUEORGUIEV** purchased a 2008 Toyota Prius from Desert Toyota, 6300 W. Sahara Avenue, Las Vegas, Nevada, financing approximately $31,737.24 of the purchase price.

l.      On or about March 20, 2008, defendant **ROSSEN DASKALOV** aka **VESKO SIMEONOV** purchased a 2008 Lexus IS350 from Lexus of Las Vegas, 6600 W. Sahara Avenue, Las Vegas, Nevada, financing approximately $49,120.87 of the purchase price.

m.      On or about March 24, 2008, defendant **ROSSEN DASKALOV**, also known as **VESKO SIMEONOV,** purchased a 2008 Audi A3 from Desert Audi, 6335 Sahara Avenue, Las Vegas, Nevada, financing approximately $45,702.94 of the purchase price.

n.      On or about March 24, 2008, defendant **ROSSEN DASKALOV**, also known as **VESKO SIMEONOV,** purchased a 2008 Subaru Tribeca from Subaru of Las Vegas, 2025 S. Decatur, Las Vegas, Nevada, financing approximately $38,286.92 of the purchase price.

o.      On or about March 25, 2008, defendant **ROSSEN DASKALOV**, also

17

known as **VESKO SIMEONOV,** purchased a 2008 Jeep Wrangler from Integrity Chrysler, 4770 Redwood Street, Las Vegas, Nevada, financing approximately $40,215.50 of the purchase price.

         p.     On or about April 10, 2008, defendant **ROSSEN DASKALOV,** also known as **VESKO SIMEONOV,** purchased a 2008 Tracker Pro 170 and 2008 Trailstar Boat Trailer from Bass Pro Shops, 8200 Dean Martin Drive, Las Vegas, Nevada, financing approximately $15,110 of the purchase price.

         q.     On or about April 11, 2008, defendant **ROSSEN DASKALOV,** also known as **VESKO SIMEONOV,** purchased a 2008 Honda Civic from Honda West, 7615 W. Sahara Avenue, Las Vegas, Nevada, financing approximately $21,007.57 of the purchase price.

         r.     On or about May 2, 2008, defendant **YULIYAN MILUSHEV** purchased a 2008 Toyota Prius from Desert Toyota, 6300 W. Sahara Avenue, Las Vegas, Nevada, financing approximately $31,957.32 of the purchase price.

         s.     On or about May 3, 2008, defendant **YULIYAN MILUSHEV** purchased a 2007 Volvo S60 from Volvo of Las Vegas, 7705 W. Sahara Avenue, Las Vegas, Nevada, financing approximately $32,471.09 of the purchase price.

         t.     On or about May 3, 2008, defendant **YULIYAN MILUSHEV** purchased a 2008 Subaru Impreza Outback Wagon from Subaru of Las Vegas, 2025 S. Decatur Blvd, Las Vegas, Nevada, financing approximately $40,334 of the purchase price.

         u.     On or about May 3, 2008, defendant **YULIYAN MILUSHEV** purchased a 2008 Honda Accord from Honda West, 7615 W. Sahara Avenue, Las Vegas, Nevada, financing approximately $38,542.40 of the purchase price.

         v.     On or about May 5, 2008, defendant **YULIYAN MILUSHEV** purchased a 2009 Nissan Murano from Desert Nissan, 5800 W. Sahara Avenue, Las Vegas, Nevada, financing approximately $38,158.67 of the purchase price.

         w.     On or about M ay 6, 2008, defendant **YULIYAN MILUSHEV** purchased a 2008 Acura RDX from Acura of Las Vegas, 7000 W. Sahara Avenue, Las Vegas, Nevada,

1  financing approximately $38,377.41 of the purchase price.

2          x.     On or about May 7, 2008, defendant **YULIYAN MILUSHEV** purchased a

3  2008 Hyundai Accent from Planet Hyundai, 7150 W. Sahara Avenue, Las Vegas, Nevada,

4  financing approximately $19,993.68 of the purchase price.

5          y.     On or about May 10, 2008, defendant **YULIYAN MILUSHEV** purchased a

6  2008 Audi A4 from Desert Audi, 6335 Sahara Avenue, Las Vegas, Nevada, financing

7  approximately $29,051.21 of the purchase price.

8          z.     On or about May 14, 2008, defendant **YULIYAN MILUSHEV** purchased a

9  2008 Kia Spectra from World Kia, 5600 W. Sahara Avenue, Las Vegas, Nevada, financing

10  approximately $20,284.46 of the purchase price.

11          aa.    On or about May 15, 2008, defendant **YULIYAN MILUSHEV** purchased a

12  2008 Chevrolet Aveo from Findley Chevrolet, 6800 S. Torrey Pines, Las Vegas, Nevada,

13  financing approximately $17,179.17 of the purchase price.

14          bb.    On or about October 2009, through and including in or about December

15  2009, **DRAGOMIR TASKOV, DIMITR DIMITROV, AND NIKOLAY MLADENOV,**

16  transported a fraudulently obtained Audi A3 from the State of Nevada to the State of California.

17          cc.    In or about January 2010, **DRAGOMIR TASKOV, DIMITR**

18  **DIMITROV, NIKOLAY and MLADENOV,** received a 2008 Audi A3,  after being stolen,

19  unlawfully converted, and taken, which crossed from the State of California to the State of

20  Nevada.

21          dd.    In or about January 2010, **DRAGOMIR TASKOV, DIMITR**

22  **DIMITROV, and NIKOLAY MLADENOV**, transport a fraudulently obtained 2008 Mercedes

23  Benz S550 from the State of Nevada to the State of California.

24                                      V.

25                      ACKNOWLEDGMENT

26      1.    Defendant, acknowledges by defendant's signature below that defendant has read

this Memorandum of Plea Agreement, that defendant understands the terms and conditions, and the factual basis set forth herein, that defendant has discussed these matters with defendant's attorney, and that the matters set forth in this memorandum, including the facts set forth in Part IV above are true and correct.

2.      Defendant acknowledges that defendant has been advised, and understands, that by entering a plea of guilty defendant is waiving, that is, giving up, certain rights guaranteed to defendant by law and by the Constitution of the United States.  Specifically, defendant is giving up:

a.      The right to proceed to trial by jury on the original charges, or to a trial by a judge if defendant and the United States both agree;

b.      The right to confront the witnesses against defendant at such a trial, and to cross-examine them;

c.      The right to remain silent at such trial, with such silence not to be used against defendant in any way;

d.      The right, should defendant so choose, to testify in defendant's own behalf at such a trial;

e.      The right to compel witnesses to appear at such a trial and to testify in defendant's behalf; and

f.      The right to have the assistance of an attorney at all stages of such proceedings.

3.      Defendant, defendant's attorney, and the attorney for the United States acknowledge that this Plea Memorandum contains the entire agreement negotiated and agreed to

. . .

. . .

. . .

. . .

20

by and between the parties, and that no other promise has been made or implied by either defendant, defendant's attorney, or the attorney for the United States.

DANIEL G. BOGDEN
United States Attorney

6-21-11

DATED

ERIC JOHNSON
Chief, Organized Crime Strike Force

DATED 6/21/11

NIKOLAY MLADENOV, Defendant

6/21/11
DATED

CHARLES KELLY, Esq.
Counsel for Defendant

21